IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SHARLYWANA LAMPRECHT,**

Plaintiff,

Civ. No. 1:14-cv-00092-CL

**OPINION AND ORDER**

v.

**COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**

Defendant.

MARK D. CLARKE, Magistrate Judge.

Plaintiff Sharlywana Lamprecht ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, it is affirmed and this matter is dismissed .

Page 1 - Opinion and Order

## BACKGROUND

Plaintiff was born in September 1962, and completed the eleventh grade. Tr. 50 . She has worked as a security guard, a waitress, and a housekeeper. Tr. 71.

Plaintiff protectively filed an application for SSI on October 1, 2008, alleging disability since July 1, 2007 due to "lower back injury, carpal tunnel syndrom in both arms, bipolar disorder, lupus, rotator cuff damage, sciatic nerve damage in right leg, heart murmur." Tr. 207. The Commissioner denied her application initially and upon reconsideration. Tr. 80-84. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 24, 2012. Tr. 43-79. On June 29, 2012, the ALJ found Plaintiff not disabled. Tr. 13-32. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920(SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(I). This activity is work involving significant mental or physical duties done or intended to be done for pay

Page 2 - Opinion and Order

or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262. F.3d 949, 954 (9th Cir. 2001).

Page 3 - Opinion and Order

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant numbers

in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.; see also* 20 C.F.R. §§ 404.1566; 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54;

*Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ applied the sequential process. At step one, the ALJ found Plaintiff has not engaged

in substantial gainful activity since the alleged onset date. Tr. 22. At step two, the ALJ found

Plaintiff's mechanical low back pain, obesity, shoulder tendonitis, depressive disorder NOS, and

generalized anxiety disorder were severe impairments. *Id.* At step three, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that met or equaled one of the specific

impairments listed in the regulations. Tr. 23.

The ALJ determined that Plaintiff had the RFC to perform light work with the following

restrictions: she can engage in push/pull activities with her upper extremities frequently, she can

balance, crouch, and crawl frequently, but she can climb, stoop, and kneel no more than occasionally.

She can understand, remember, and carry out simple instructions learnable after a brief

Page 4 - Opinion and Order

demonstration or within 30 days. She can have occasional contact with the public and co-workers. Tr. 24. In reaching his conclusion, the ALJ considered Plaintiff's testimony, but found her not fully credible. Tr. 29. At step four, the ALJ found Plaintiff had no past relevant work. Tr. 30. Considering Plaintiff's age, education, experience, and RFC, the ALJ determined Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including marking clerk, assembler, and sorter. Tr. 31. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, since the date of her application. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009)(quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007)(quoting *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir.

Page 5 - Opinion and Order

2006)(internal quotations omitted)).   The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray,* 554 F.3d at 1226.

## ADMINISTRATIVE RECORD

### A. Testimony

Plaintiff testified at a hearing on May 24, 2012.   She was 49 years old at the time of the hearing, and represented by counsel.   She completed eleventh grade, and last worked as a housekeeper until she quit on May 1, 2007.  Tr. 51.  She has not looked for work since then.  She believes she is not able to work full-time because of back pain and fibromyalgia with migraines.  Tr. 53.     Plaintiff testified she has right leg sciatica and her leg swells if she sits or stands too long. She has anxiety attacks if she leaves her home.  Tr. 54.

Plaintiff testified she takes Vicodin and tramadol three times a day, and trazodone and Klonopin at night.  She has had carpal tunnel release surgery on her right wrist.  She has a walker that she uses about once a month.  She takes Imitrex for migraines about three times a month.  Tr. 58.

Plaintiff stated medical records from January 2011, which indicated she had used methamphetamines in the prior year, were in error.  Tr. 60.

Ms. Lamprecht testified that she agreed with the opinion of Clay McCord, M.D., that she could sit up to four hours in an eight hour work day and stand or walk for less than two hours.  Tr. 61.   Plaintiff said she would require four or five 20 minute breaks during a day.  Tr. 62.  She can walk one half to one block at a time and then must rest before walking back.  Tr. 63.  She has chronic uterus pain two to three days each week  for which a hysterectomy was recommended, but it was not

Page 6 - Opinion and Order

covered by insurance. *Id.* Plaintiff experiences side effects from medications including dry mouth, dizziness, and fatigue. Tr. 64. The joints in her hands get sore and swell a couple of times each week. Tr. 65.

Plaintiff testified she has trouble completing tasks. Tr. 66. She can only concentrate for 20 to 30 minutes. Her back starts to hurt after standing for ten to 15 minutes. Tr. 67. Her kids do most of the cooking.

Plaintiff goes to church about twice a month, where she sits in the back so she can change position every 15 to 20 minutes. Tr. 67. She has trouble brushing her hair, she loses her grip with her right hand, and she will have pain in her arms and back after lifting a gallon of milk. Tr. 68.

## B. Medical Records

The medical records are extensive, and the parties are familiar with them. Therefore they will be set out below when relevant.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly assessing her credibility; (2) improperly weighing the opinion of examining physicians; (3) failing to credit a lay witness; (4) failing to evaluate the combined effect of her impairments; and (5) posing an incomplete hypothetical to the vocational expert.

## A. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason

for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify

what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The

evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also*

*Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in

general" indicates improvement) are an insufficient basis to support an adverse credibility

determination. *Reddick,* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make

a credibility determination with findings sufficiently specific to permit the court to conclude that the

ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958

(9th Cir 2002).

    In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must

perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,*

80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective
> symptoms "must produce objective medical evidence of an underlying
> impairment which could reasonably be expected to produce the pain or other
> symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423
> (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes
> only two requirements on the claimant: (l) she must produce objective
> medical evidence of an impairment or impairments; and (2) she must
> show that the impairment or combination of impairments *could*
> *reasonably be expected to* (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.

    The ALJ found "the claimant's statements concerning the intensity, persistence, and limiting

effects of her alleged symptoms are less than fully credible...." Tr. 29. The ALJ noted the objective

medical findings do not support the degree of physical limitation Plaintiff endorses. The ALJ said multiple providers recommended conservative treatment and exercise but that Plaintiff was not compliant. Tr. 28, 1005, 1042, 1058, 1059, 1112. The ALJ noted that at least one treatment provider said Plaintiff displayed greater capabilities when she was unaware that she was being observed. Tr. 753. One doctor commented that Plaintiff over-utilized clinic visits, and another said Plaintiff tended to overstate her symptoms. Tr. 29, 1036. A tendency to exaggerate is a valid consideration in determining credibility. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ noted inconsistencies in Plaintiff's symptom reports, particularly with regard to hallucinations. Tr. 29. The ALJ properly noted Plaintiff failed to follow-up with treatment. Tr. 29, 764, 1059, 1094, 1112. A claimant's failure to have a good reason for not seeking treatment, "or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen,* 885 F.3d 597, 603 (9th Cir. 1989).

The ALJ identified clear and convincing reasons to find Plaintiff less than fully credible.

**B. Medical Evidence**

An ALJ may properly reject a treating physician's uncontradicted medical opinion only for "clear and convincing reasons." *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995). When the treating physician's opinion has been contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

**1. Clay McCord, M.D.**

Page 9 - Opinion and Order

Plaintiff argues the ALJ should have given the greatest weight to the opinion of Dr. McCord regarding the issue of fibromyalgia. A rheumatologist, Dr. McCord completed a "Physical Residual Functional Capacity Questionnaire" on June 20, 2011, in which he indicated he first saw Plaintiff in January 2011, and last saw her February 23, 2011. Tr. 947-51. Dr. McCord indicated that Plaintiff's anxiety affected her physical condition, and that pain or other symptoms would interfere with her attention and concentration "occasionally," defined as "6% to 33% of an 8 -hour working day." Tr. 948. He opined she could sit for 1 hour and stand for 15 minutes "before needing to get up...sit down, walk around, etc." but could sit for four hours and stand/walk less than two hours total in an 8-hour workday. Tr. 948-49. Dr. McCord indicated Plaintiff needed to walk around for five minutes every hour. Tr. 949.

The ALJ noted Dr. McCord's opinion, and gave it no weight. Tr. 30. The ALJ properly found that treating physician Harold Perez, M.D., referred Plaintiff to a rheumatologist in January 2008 after a blood test showed "a positive or elevated APPT correction suggestive of the presence of a lupus anticoagulant." Tr. 767-68. But in March 2008 rheumatologist Edward Tackey, M.D. concluded that "findings and symptoms are not quite suggestive of an ongoing autoimmune disease" and "[i]n the absence of clear cut stigmata of lupus [he was] unable to make a diagnosis of lupus." Tr. 741.

As to fibromyalgia, in June 2010 Jon G. McKeller, M.D., examined Plaintiff and "checked all of the fibromyalgia  points and did not elicit a response from any of them." Tr. 23, 28, 29-30, 924. In September 2008 H. Walter Emori, M.D., found "3+ fibromyalgia tender points." Tr. 28, 735. In January 2011, Dr. McCord saw Plaintiff to follow-up on "FM, [fibromyalgia]'SLE' [systemic lupus erythematosus] but not substantiated." Tr. 956, 960-66. The ALJ properly found that Dr.

McCord's chart notes contradict his medical source statement. This is a clear and convincing reason to reject a physician's opinion. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ properly noted that multiple treating and examining physicians opined that Plaintiff could perform work activities. Tr. 28. In January 2007 Dr. Perez noted "I expect that with appropriate physical therapy and conditioning, she will be able to return to work on light duty activities." Tr. 26, 459. In August 2010 Carey Allen, M.D., told Plaintiff that she "did not think she was disabled although she may not be able to do the work that she did when she was younger and in better shape that she was definitely still employable." Tr. 28, 1058. In February 2012, Radu Moisa, M.D., said Plaintiff frequently presented with multiple symptoms of questionable etiology. Tr. 28, 1038, 1040, 1050, 1059, 1086, 1262.

## 2. William Trueblood, Ph.D.

Dr. Trueblood examined Plaintiff in June 2010. Tr. 928-44. The ALJ noted Dr. Trueblood's diagnoses of panic disorder with agoraphobia, bipolar II disorder, pain disorder, dysthymia, rule out bipolar I disorder, rule out major depressive disorder, rule out PTSD, rule out cognitive disorder NOS, and provisional borderline personality characteristics. Tr. 28, 939. Dr. Trueblood said that he was "not a vocational expert" and that any opinion he offered "on this issue" of obtaining and maintaining employment was "a tentative one." Tr. 939. Dr. Trueblood opined that Plaintiff did not have "any cognitive deficits that would pose large obstacles to [her] working." *Id.* Dr. Trueblood "lean[ed] toward" the conclusion that Plaintiff was psychologically incapable of sustaining work at that point in time, but noted that she had worked in the past despite her problems and that she was benefitting from treatment if she maintained her compliance. Tr. 28, 940.

The ALJ rejected Dr. Trueblood's opinion as inconsistent with the weight of the evidence and inconsistent with two consultative examiners' opinions. Tr. 30. The ALJ noted Plaintiff was known to exaggerate her symptoms, and her demonstrated social functioning was not consistent with Dr. Trueblood's assessment. The ALJ cited the June 2007 examination of Plaintiff by Jeanette Townsend, Ph.D., who found Plaintiff had adequate attention, but demonstrated some difficulty with tasks requiring more focused concentration. Tr. 26, 474. She opined Plaintiff had the ability to understand simple, detailed, and some complex instructions and recommended that Plaintiff be limited to simple, repetitive tasks. Tr. 26, 475. Dr. Townsend noted that anxiety would interfere with Plaintiff's ability to complete a work-day on occasion, but did not specify the degree of absenteeism or other problems expected to arise from anxiety.

The ALJ cited the June 2008 examination of Plaintiff by Stephen Tibbitts, Ph.D. Tr. 27, 595-603. Based on a clinical interview, tests, a mental status examination, and Plaintiff's reports, Dr. Tibbitts diagnosed depressive disorder NOS. Tr. 27, 598. Dr. Tibbitts opined that Plaintiff had moderate limitations in the ability to maintain attention for extended periods, the ability to maintain regular attendance and be punctual within customary tolerances, the ability to complete a normal workday without interruption from psychologically based symptoms, and the ability to get along with co-workers without distracting them or exhibiting behavioral extremes. Tr. 601. Dr. Tibbits found Plaintiff had no limitations in activities of daily living and social functioning, and only mild limitation in concentration, persistence or pace. Tr. 602.

The ALJ cited the opinions of the State Agency reviewing psychologists, Megan D. Nicoloff, Psy.D. and Joshua J. Boyd, Psy. D., who reviewed the record in December 2008 and July 2010, respectively, and determined Plaintiff was able to understand, remember, and carry out short, simple

Page 12 - Opinion and Order

instructions. Tr. 28, 851, 946. Dr. Nicoloff noted that Plaintiff had some concentration difficulties, but was clearly able to concentrate sufficiently to perform simple tasks, maintain a schedule, and complete a normal workday and work week. Tr. 851. Dr. Boyd affirmed Dr. Nicoloff's opinion. Tr. 946. The ALJ gave some weight to these opinions as consistent with the medical record. Tr. 30.

On this conflicting record, the ALJ identified clear and convincing and specific and legitimate reasons to reject Drs. McCord and Trueblood and her analysis of the medical evidence is supported by substantial evidence.

## C. Lay Witness

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff contends the ALJ erred in weighing the November 2008 "Employability Assessment" from Lyn Romano at Goodwill Industries. Tr. 29, 536. Ms. Romano said Plaintiff was at Goodwill for about three months, from August to November 2006, but missed more days than she attended. Ms. Romano said Plaintiff missed work because she was feeling ill or her children had issues, and she failed to report her absences. The ALJ noted Ms. Romano's report was dated over

two years after Plaintiff's work ended, and it was not clear whether the report was based on Ms. Romano's observations. Tr. 29. The ALJ concluded that Ms. Romano's assertion that Plaintiff was unemployable was based at least in part due to absenteeism arising from issues involving her children, which is not material to a finding of disability under the Social Security Act. *Id.*

The ALJ's rejection of this lay evidence is supported by substantial evidence.

## D. Combined Effect of Impairments

Plaintiff contends the ALJ erred by failing to consider the combined effect of her impairments. She does not point to any functional limitation the ALJ failed to consider, nor does she point to any of the listed impairments to which her impairments are allegedly equal. *Burch,* 400 F.3d at 683 (*citing Lewis v. Apfel,* 236 F.3d 503, 514 (9thCir. 2001). The record indicates the ALJ considered the combined effect of Plaintiff's impairments.

## E. Hypothetical Question to the Vocational Expert

As set out above, the ALJ's hypothetical question to the vocational expert was supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is supported by substantial evidence. For these reasons, the decision of the Commissioner is affirmed and this matter is dismissed.

IT IS SO ORDERED.

Dated this __/ 9__ day of May, 2015.

Mark D. Clarke
United States Magistrate Judge

Page 14 - Opinion and Order

Page 15 - Opinion and Order